IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSE ENRIQUE LEBRON-GARCIA

                Petitioner

    v.

JOHN E. WETZEL, et al.,

                Respondents.

CIVIL ACTION
NO. 18-1997

## OPINION

**Slomsky, J.**                                           **April 10, 2019**

## I.    INTRODUCTION

Before the Court is the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner Jose Lebron-Garcia ("Petitioner"), a state prisoner incarcerated at the State Correctional Institution, Forest ("SCI-Forest") in Marienville, Pennsylvania. (Doc. No. 1.) On November 28, 2018, Magistrate Judge Timothy R. Rice issued a Report and Recommendation ("R&R"), recommending that the Petition be denied and that a certificate of appealability not be issued. (Doc. No. 10.)

On December 5, 2018, Petitioner filed Objections to the R&R through his attorney, Burton A. Rose, Esquire.[1] (Doc. No. 11.) On December 6, 2018, Respondents filed a Response in

---

[1]  When Petitioner filed the Petition for Writ of Habeas Corpus, he was represented by Burton A. Rose, Esquire. As noted here, Mr. Rose also filed Objections on behalf of Petitioner. (See Doc. No. 11.) However, on December 18, 2018, Petitioner filed a pro se Motion for Extension of Time to File Objections to the R&R. (Doc. No. 14.) In the Motion, he wrote: "Petitioner is now without counsel to represent him. Counsel of record is no longer able to proceed due to Petitioner['s] inability to pay for further services." (Id. at 1.) He also attached a letter from Mr. Rose, in which Mr. Rose wrote that he would not complete any further legal work for Petitioner without getting paid. (Id. at 4.) Petitioner then proceeded to file pro se Objections to the R&R. (Doc. No. 17.) To date, Mr. Rose has not withdrawn his appearance on behalf of Petitioner.

Opposition to Petitioner's Objections. (Doc. No. 13.) On December 26, 2018, Petitioner filed <u>pro se</u> Objections to the R&R. (Doc. No. 17.) That same day, Petitioner filed a <u>pro se</u> Motion Requesting Leave to Amend Pursuant to Federal Rule of Civil Procedure 15(c)(2). (Doc. No. 18.)

For reasons stated below, the Court will approve and adopt the R&R (Doc. No. 10), and will deny the Petition for Writ of Habeas Corpus (Doc. No. 1). Additionally, the Court will deny Petitioner's Motion Requesting Leave to Amend the Petition (Doc. No. 18).[2]

## II.    BACKGROUND

### A.    Petitioner Jose Lebron-Garcia's State Court Conviction, Guilty Plea Hearing, and Sentencing

On June 17, 2012, police officers from the Lancaster City Bureau of Police were dispatched to a parking garage located at 150 N. Duke Street in Lancaster, Pennsylvania, in response to a report of a shooting. <u>See</u> <u>Commonwealth v. Lebron-Garcia</u>, No. 1451 MDA 2016, 2017 WL 471257, at *1 (Pa. Super. Ct. Oct. 20, 2017). Upon arrival, the police blocked the exit ramps of the parking garage. <u>Id.</u> The officers then observed Petitioner Jose Lebron-Garcia fleeing the scene and detained him. <u>Id.</u> Thereafter, police officers found the victim, Pablo Fuentes-Robles, lying on the second floor of the parking garage, bleeding from several gunshot wounds to the torso. <u>Id.</u> Fuentes-Robles was taken to Lancaster General Hospital, where he was pronounced dead. <u>Id.</u> Several witnesses at the scene told police officers that they saw Petitioner shoot Fuentes-Robles.[3]

---

[2]    For the purposes of this Opinion, the Court has considered the Petition for Writ of Habeas Corpus (Doc. No. 1); Respondents' Response in Opposition to the Petition for Writ of Habeas Corpus (Doc. No. 6); Petitioner's Reply in Support of the Petition for Writ of Habeas Corpus (Doc. No. 9); the Report and Recommendation (Doc. No. 10); Petitioner's Objections to the R&R, filed by Mr. Rose (Doc. No. 11); Respondents' Response in Opposition to the Objections (Doc. No. 13); Petitioner's <u>pro se</u> Objections to the R&R (Doc. No. 17); Petitioner's <u>pro se</u> Motion Requesting Leave to Amend (Doc. No. 18); and the pertinent state record in this case.

[3]    At his Guilty Plea Hearing, Petitioner admitted that these facts were accurate. (Doc. No. 6-2 at 7-8.)

Id.  Later that day, Petitioner was charged with criminal homicide.  Id.  An attorney from the Lancaster Public Defender Office was appointed to represent him.  (See Doc. No. 6-2 at 135-36.)

On August 23, 2012, the Commonwealth filed a notice that it intended to seek the death penalty.  (Doc. No. 6-1 at 7.)  Almost two years later, on August 4, 2014, Petitioner entered into a negotiated plea agreement wherein he agreed to plead guilty to a charge of first-degree murder.  In exchange, the Commonwealth agreed to recommend a sentence of life imprisonment without the possibility of parole, instead of seeking the death penalty.  (Doc. No. 6-2 at 6.)  At the plea hearing and sentencing, Petitioner was represented by Assistant Public Defender Samuel Encarnacion, Esquire.[4]  Also present at the hearing was a Spanish-language interpreter to translate for Petitioner, who does not speak fluent English.  (Id.)

During the plea hearing and sentencing, Petitioner, with the help of the interpreter, participated in an oral Guilty Plea Colloquy with the state trial court.[5]  The attorney for the Commonwealth, Assistant District Attorney ("ADA") Michael D. Fetterman, first set forth the terms of the agreement, and the trial court then asked whether Petitioner understood the nature of the plea deal:

> ADA:    Your Honor, Count I of the Information is a general charge of criminal homicide.  The defendant will be pleading guilty to the specific charge of murder of the first degree pursuant to Section 2502(a) of the Crimes Code.

---

[4]  At least three other Assistant Public Defenders represented Petitioner before Mr. Encarnacion entered his appearance, more than six months after Petitioner was arrested.  (See Doc. No. 6-2 at 135-36.)

[5]  A plea colloquy is the conversation between a judge and a defendant who has been sworn under oath, which must occur before the judge accepts the defendant's guilty plea.  The plea colloquy is intended to ensure that the defendant understands his rights and the nature of the plea agreement, and that he is making the plea knowingly and voluntarily.  Plea Colloquy, WEX LEGAL DICTIONARY https://www.law.cornell.edu/wex/plea_colloquy (last visited: Mar. 19, 2019).

In exchange for this plea, the Commonwealth is recommending a sentence of life imprisonment without the possibility of parole, cost of prosecution, mandated DNA sampling and cost thereof. There is restitution due in this matter of $12,749.82. That's the extent of the terms of the plea.

*** 

Court: Do you understand that you initially had a charge of general criminal homicide?

Interpreter: Yes.

Court: That the Commonwealth filed a notice seeking intent for the death penalty?

Interpreter: Yes.

Court: And the agreement for today is that you are pleading guilty to first degree murder for a sentence of life imprisonment. Do you understand that?

Interpreter. Yes.

Court: Is this your signature on that guilty plea slip?

Interpreter: Yes, Your Honor.

Court: And do you understand that by pleading guilty to a charge of first-degree murder where the death penalty has been removed, the only sentence permissible is life imprisonment? Do you understand that?

Interpreter: Yes.

Court: And that's also shown on the sentencing guideline worksheets, which clearly indicates murder of the first degree only permits a sentence of life imprisonment at this point.

Now with regard to all of the documents that I've already shown you, as well as what's called a Guilty Plea Colloquy and Post-Sentence Rights Form, did you review each of those with your attorney as well as an interpreter?[6]

---

[6] As noted by the trial court, Petitioner, with the help of an interpreter, completed and signed a written Guilty Plea Colloquy in which he acknowledged that he was knowingly and voluntarily

4

| | |
|---|---|
| Interpreter: | Yes. |
| Court: | With regard to this guilty plea colloquy, is this your signature along with the attorney's on the seventh page of that document? |
| Interpreter: | Yes, Your Honor. |
| Court: | Did you have a full and complete opportunity to review this with your attorney before you signed it? |
| Interpreter: | Yes, Your Honor. |

(Id.)

The trial court then proceeded to ask Petitioner whether he entered into the plea agreement knowingly and voluntarily:

| | |
|---|---|
| Court: | You are clear in your mind as to what you're doing; is that correct? |
| Interpreter: | Yes. |
| Court: | Whose decision is it then to plead guilty to this charge? |
| Interpreter: | Mine. |
| Court: | Have you been forced, threatened or coerced in any way to plead guilty? |
| Interpreter: | No. |
| Court: | Are you pleading guilty of your own free will because, in fact, you did commit this offense? |
| Interpreter: | Yes. |

(Id.)

---

pleading guilty to first-degree murder and a maximum sentence of life imprisonment without the possibility of parole. (See Doc. No. 6-1 at 124-30.)

After the guilty plea colloquy, the trial court gave Petitioner a chance to address the court, and also heard from the victim's family members. After the victim's family spoke, ADA Fetterman asked the trial court to accept the parties' negotiated plea agreement:

ADA: . . . This is a just solution. This legislature has seen fit that life in Pennsylvania does mean life, and the family feels justice today and I believe the Commonwealth as a whole feels justice today. . . . So in the interest of justice, we ask the Court to accept this resolution.

Court: Thank you, counsel. I accept the guilty plea of Jose Lebron-Garcia at 4312 of 2012 to the offense of murder in the first degree, that it is knowingly, voluntarily and intelligently presented to the Court.

As it is part of the plea agreement but also the only option, this day and time, August 4th, 2014, I sentence him to incarceration in the state correctional facility for the remainder of his life.

(Id. at 11.)

## B. Petitioner's Petition for Collateral Relief under the Post Conviction Relief Act ("PCRA")

Petitioner did not appeal his sentence. Instead, on August 12, 2014, just eight days after entering his guilty plea, Petitioner filed a pro se Motion to Withdraw Plea Under Ineffect[ive] Assistance of Counsel. The pro se filing stated that his attorney, Mr. Encarnacion, pressured him to plead guilty by telling him that "he could not do anything to save him other than take a life sentence without right to parole or get the death penalty, 'cut and dry.'" (Id. at 21.) Upon receipt of the pro se Motion, Mr. Encarnacion arranged to speak with Petitioner over the phone. During that conversation, which took place on August 27, 2014, Mr. Encarnacion advised Petitioner to file a PCRA petition if he sought to raise an ineffective assistance of counsel claim. (Id. at 171.) Further, he advised Petitioner that there was no proper basis to file either a motion to withdraw the guilty plea or a direct appeal of the sentencing to the Superior Court. (Id.)

On June 8, 2015, Petitioner filed a Petition for Reconsideration or Recision of Sentence, Nunc Pro Tunc. (Id. at 26.) On June 15, 2015, the trial court denied the Petition for

Reconsideration as untimely.  (Id. at 31.)  On July 20, 2015, Petitioner filed a document with the trial court entitled "Review: Petition for Habeas Corpus and Juris Secundum."  (Id. at 33.)  The trial court construed this document as a petition for collateral relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), and on July 27, 2015, appointed Heather Adams, Esquire, to represent Petitioner on collateral review.  (Id. at 39.)

On January 20, 2016, Petitioner, through Ms. Adams, filed an Amended PCRA Petition.  (Id. at 42.)  In the Amended PCRA Petition, Petitioner claimed that he only pled guilty because his trial counsel, Mr. Encarnacion, told him that he would immediately file an appeal.  Accordingly, Petitioner claimed that Mr. Encarnacion was ineffective for "fail[ing] to file a timely motion to withdraw guilty plea, post-sentence motion and notice of appeal after specifically being requested by Defendant to withdraw his plea before the Lancaster County Court of Common Pleas and appeal his conviction to the Pennsylvania Superior Court."  (Id. at 45.)  Additionally, Petitioner asserted that the guilty plea was "involuntary and unlawfully induced because [he] relied on trial counsel's statement that he could not do anything to save him other than take a life sentence or get the death penalty 'cut and dry' . . . ."  (Id. at 46.)

On March 29, 2016, the trial court held a hearing on the Amended PCRA Petition.   At the hearing, Mr. Encarnacion, who is a native Spanish speaker, testified that he met with Petitioner several times to discuss the merits of the case.  (Id. at 99-102.)  To that end, Mr. Encarnacion told the trial court that Petitioner was very involved in the case: "[H]e knew the discovery.  He knew all the facts very well.  I mean, knew everything, you know about his case.  And I cannot . . . even tell you how many times we spent with  . . . the other attorney, discussing this case, discussing the merits of the facts of his case, and discussing the option of his case."  (Id. at 120.)  Mr. Encarnacion also testified that Petitioner made the guilty plea knowingly and voluntary:

> When I was informed by [the mitigation specialist] that [Petitioner] wanted to plead guilty to life and I met with him maybe two or three times before that plea took place. And to me, during that period of time, let's say Jose was a much different person and I'm talking about not in personality but in his attitude towards the case. He [sic] was obvious he wanted to plead guilty. He was at peace with the decision. He had told me that I found a purpose in life. You know, he wanted to minister. He became very religious during this period of time, wanted to minister to people and, frankly from that period of time until he pled guilty, he was not a problem. You know, it was not something that he came kicking and screaming to a plea, and the judge was able to observe this. I did the entire plea when he pled and it went without a hitch. There was no problem.

(Id. at 122.) Additionally, both Petitioner and Mr. Encarnacion testified that Petitioner had the assistance of a Spanish language interpreter at every step in the proceedings.

Additionally, Mr. Encarnacion testified that he never told Petitioner that he would file an appeal immediately after the sentencing. In fact, Mr. Encarnacion explained that in his forty-three years as an attorney, twenty-seven of which he spent as a public defender, it was his practice to explain to clients that "if you are pleading guilty and you want to appeal, don't plead guilty." (Id. at 114-15.) He testified that he would not have permitted Petitioner to enter a guilty plea if he had made any indication that he did not want to plead guilty or that he wanted to file an appeal immediately thereafter. (Id. at 133.)

On August 8, 2016, the trial court issued an Opinion denying PCRA relief. (Id. at 168.) In so concluding, the trial court reasoned as follows:

> It is clear to this Court that the boilerplate claims of ineffective trial counsel and coercion that Defendant relied upon in his pro se motion to withdraw his plea are meritless and have no basis in fact. The assertions Defendant makes to support his contention of trial counsel's ineffectiveness contradict the statements he made on the record at the plea proceeding. However, under the law, Defendant is not entitled to a withdrawal of his guilty plea by simply retracting or contradicting his statements made during the colloquy. Commonwealth v. Pollard, 832 A.2d 517, 523 (Pa. Super. 2003). Additionally, after Attorney Encarnacion received Defendant's motion, he had a lengthy conversation with Defendant on August 27, 2014 regarding his claims. Based on his review of Defendant's motion and their conversation, Attorney Encarnacion concluded that no credible grounds to support the withdrawal of Defendant's plea existed. Attorney Encarnacion could not claim

his own ineffectiveness, see Commonwealth v. Ford, 44 A.3d 1190, 1199 (Pa. Super. 2012), and counsel cannot be deemed ineffective for failing to file a motion to withdraw a plea when he is not aware that any grounds for withdrawal existed. Commonwealth v. Gonzalez, 840 A.2d 326, 331 (Pa. Super. 2003).

Defendant's testimony reveals that, upon further reflection, he is simply unhappy with the sentence he received based on his decision to enter a plea of guilty to first degree murder. A decision that, the record clearly shows, was knowingly, intelligently, and voluntarily made. Defendant's displeasure does not render the plea or sentence illegal or improper, nor does his displeasure render Attorney Encarnacion's representation ineffective.

(Id. at 179-80.)

On September 2, 2016, Petitioner filed a Notice of Appeal to the Pennsylvania Superior Court. On September 27, 2016, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), Petitioner filed a Concise Statement of Matters Complained of on Appeal ("Rule 1925(b) Statement").[7] In the Rule 1925(b) statement, Petitioner raised two issues:

1. Whether the trial court erred in holding plea counsel was not ineffective for failing to file a Post Sentence Motion or direct appeal.

2. Whether the trial court erred in holding that Defendant's plea was not involuntary and unknowing.

(Id. at 183.)

On September 29, 2016, pursuant to Pennsylvania Rule of Appellate Procedure 1925(a),[8] the trial court issued a Rule 1925(a) Opinion, recommending that the Order denying PCRA relief

---

[7]   Pennsylvania Rule of Appellate Procedure 1925(b) states the following:

If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa. R. App. P. 1925(b).

[8]   After a defendant files his Rule 1925(b) statement, Rule 1925(a) obligates the trial court judge to issue an opinion addressing the issues raised by the defendant. Pa. R. App. P. 1925(a).

not be disturbed.  (Id. at 187.)  Soon thereafter, Ms. Adams withdrew her appearance on behalf of

Petitioner, who then retained private counsel—Burton A. Rose, Esquire.  (Id. at 210; Doc. No. 6-

3 at 22.)  On June 20, 2017, Petitioner, through Mr. Rose, appealed the trial court's PCRA decision

to the Pennsylvania Superior Court.  In the appellate brief, Petitioner raised two issues:

1. The appellant was denied his federal and state constitutional right to the
   effective assistance of plea counsel because he entered a guilty plea to murder
   of the first degree and received a sentence of life imprisonment where he was
   not given the opportunity to acknowledge that he understood what this meant
   that there would be no possibility of release on parole, which he did not
   understand at that time and would not have pleaded guilty if so informed.

2. The case should be remanded to the PCRA Court for further proceedings to
   allow the appellant to litigate this claim in the Lower Court where he was denied
   Pennsylvania Constitutional and rule-based right to effective assistance of
   PCRA counsel.

(Doc. No. 6-3 at 29.)  Additionally, Petitioner attached an Affidavit to the appellate brief, in which

he stated the following:

> When I entered a plea of guilty to the offense of murder of the first degree on
> August 4, 2014, I was not aware that the sentence of life imprisonment that I was
> facing was a term of life in prison forever, without any possibility of parole.  I had
> believed that a life prisoner would be able to obtain parole at some point in the
> future.  Had I known that this belief was wrong, I would not have agreed to enter a
> plea of guilty but instead I would have gone to trial.  I would have been willing to
> face a jury and run the risk of possibly getting a penalty of death rather than accept
> a plea agreement that would require me to spend the rest of my life in prison without
> any possibility of being someday released on parole.
>
> Neither the Court nor my plea counsel discussed this point of law with me at or
> before the guilty plea and sentencing.  The lawyer who represented me at the PCRA
> proceedings did not discuss this issue with me and I was not trained in the law and
> did not understand the actual consequences of this guilty plea, until I was so advised
> by my present counsel, so I did not know that I should say something about this
> when I testified at the PCRA hearing.

(Id. at 91-92.)

On October 20, 2017, the Pennsylvania Superior Court issued an Opinion, affirming the

ruling of the trial court.  See Commonwealth v. Lebron-Garcia, No. 1451 MDA 2016, 2017 WL

4712571, at *1-2 (Pa. Super. Ct. Oct. 20, 2017).  On November 6, 2017, Petitioner filed an

Application for Reargument En Banc, which the Superior Court dismissed as untimely.  (Doc. No.

6-4 at 143, 157.)  Thereafter, on December 1, 2017, Petitioner filed a Petition for Allowance of

Appeal with the Pennsylvania Supreme Court.  (Id. at 159.)  On April 10, 2018, the Pennsylvania

Supreme Court denied his Petition.  Commonwealth v. Lebron-Garcia, 184 A.3d 145 (Pa. Apr. 10,

2018) (Table).

### C.    Petitioner's Petition for Writ of Habeas Corpus in Federal Court

On May 10, 2018, Petitioner, through Mr. Rose, filed a Petition for Writ of Habeas Corpus

under 28 U.S.C. § 2254, in which he raised a claim for ineffective assistance of counsel.  (Doc.

No. 1.)  In support of his claim, he stated the following:

> The Petitioner did not have effective assistance of counsel in his PCRA proceedings
> before the Court of Common Pleas of Lancaster County in view of the failure to
> present his claim that his guilty plea was made involuntarily as he was not advised
> that a life sentence in PA meant that he would never be eligible for parole.  The
> resolution of this contention by the Superior Court of PA was erroneous and
> unreasonable, thereby denying him due process of law, where that Court refused to
> remand this case to develop the record on this issue.  The Petitioner was therefore
> denied his Sixth Amendment right to effective assistance of both guilty plea and
> PCRA counsel.

(Id. at 8.)  In short, he brings a two-part ineffective assistance of counsel claim: (1) that Mr.

Encarnacion was ineffective for failing to advise him that his sentence meant that he was ineligible

for parole; and (2) that Ms. Adams was ineffective for not presenting the claim regarding Mr.

Encarnacion in the Amended PCRA Petition.

On May 17, 2018, this Court referred the case to Magistrate Judge Timothy R. Rice for a

Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and the local rules of

this Court.  (Doc. No. 2.)  On July 23, 2018, Respondents filed Response in Opposition to the

Petition for Writ of Habeas Corpus, arguing that the Court should deny the Petition as procedurally

defaulted and meritless.  (Doc. No. 6.)  On October 3, 2018, Petitioner filed a Reply in Support of the Petition.  (Doc. No. 9.)

On November 28, 2018, Magistrate Judge Rice issued the R&R, recommending that the Court deny the Petition without prejudice.  In the R&R, the Magistrate Judge concluded that he "need not determine whether the issue has been procedurally defaulted or if that default should be excused, because it is plainly meritless."  (Doc. No. 10 at 6.)  On December 5, 2018, Petitioner, through Mr. Rose, filed Objections to the R&R.  (Doc. No. 11.)  The next day, Respondents filed a Response in Opposition to the Objections.  (Doc. No. 13.)

Then, on December 18, 2018, Petitioner filed a pro se Motion for Extension of Time to File Pro Se Objections to the R&R, wherein he explained that he needed to proceed pro se because "Petitioner is now without counsel to represent him.  Counsel of record is no longer able to proceed due to Petitioner['s] inability to pay for further services."  (Doc. No. 14 at 1.)  Attached to the Motion was a letter from Mr. Rose to Petitioner dated December 2, 2018, which states the following:

> On November 30, 2018, I received the attached Report and Recommendation of the U.S. Magistrate Judge which rules against your federal habeas corpus petition.
>
> You have until December 13, 2018 to file a Statement of Objections to this Report in the United States District Court in Philadelphia.
>
> My legal fee has not been paid as I had requested so I am not going to do more legal work on your behalf without being paid.  The balance due is $5,695.00.[9]

(Id. at 4.)  Consequently, on December 20, 2018, the Court granted Petitioner's Motion for an Extension of Time (Doc. No. 16), and on December 26, 2018, Petitioner filed pro se Objections to

---

[9] Despite sending to Petitioner the December 2, 2018 letter, Mr. Rose still filed Objections on behalf of Petitioner on December 5, 2018.

the R&R (Doc. No. 17.)  As noted above, notwithstanding the content of his letter, Mr. Rose has not withdrawn his appearance on behalf of Petitioner to date.

Also filed on December 26, 2018 was a Motion Requesting Leave to Amend Pursuant to Federal Rule of Civil Procedure 15(c).  In the Motion, Petitioner asks the Court to permit him to add the following claim:

> PCRA Counsel rendered ineffectiveness [sic] for failing to raise post sentencing counsel['s] in-effectiveness for failing to withdraw from Petitioner['s] case when Petitioner filed a pro se Motion to withdraw his guilty plea due to ineffective assistance of plea counsel, putting post sentencing counsel on notice that his stewardship was in question for allowing Petitioner to enter into an unknowingly [sic] and involuntary Guilty Plea.

(Doc. No. 18 at 2.)  In a footnote, Petitioner states that "post sentencing counsel" refers to Mr. Encarnacion.  (Id. at 2 n.1.)  Petitioner also notes that he recognizes that this claim is procedurally defaulted, but asks the Court to excuse the default pursuant to Martinez v. Ryan, 566 U.S. 1 (2012). (Id. at 2.)  Respondents did not file a response to Petitioner's Motion for Leave to Amend.

## III.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs habeas petitions, like the one before the Court.  Under Section 2254 of the AEDPA, "a district court shall entertain an application for writ of habeas corpus [filed on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.  See 28 U.S.C. § 363(b)(1)(B); E.D. Pa. Civ. R. 72.1.  Any party may file objections in response to the magistrate judge's report and recommendation.  Id. at § 363(b)(1)(C).  Whether or not an objection is made, a district judge "may accept, reject, or

modify, in whole or in part, the findings of recommendations made by the magistrate judge. The [district] judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also 28 U.S.C. § 636(b).

On habeas review, a federal court must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established law, or (2) based on an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254(d). A state court's decision is "contrary to . . . clearly established" federal law where the state court applies a rule of law that differs from the governing rule set forth in Supreme Court precedent, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A decision is an "unreasonable application" of clearly established law where the state court "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id. at 75 (quoting Williams, 529 U.S. at 413). The "unreasonable application" clause requires more than an incorrect or erroneous state court decision. Id. Rather, the application of clearly established law must be "objectively unreasonable." Id.

Under the AEDPA, on habeas review, a federal court must presume that factual findings of state trial and appellate courts are correct. Stevens v. Del. Corr. Ctr., 295 F.3d 361, 368 (3d Cir. 2002). A petitioner can only overcome this presumption by producing clear and convincing evidence to the contrary. Burt v. Titlow, 571 U.S. 12, 18 (2013). "AEDPA requires a state prisoner

[to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." Id. at 20 (quoting Harrington v. Richter, 562 U.S. 86, 104 (2011)).

A federal court must construe a prisoner's pro se pleading liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). A "pro se complaint, however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); see also Higgs v. Att'y. Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) ("[W]hen presented with a pro se litigant, we 'have a special obligation to construe his complaint liberally.'") (quoting United States v. Miller, 197 F.3d 644, 648 (3d Cir. 1999)).

## IV.    ANALYSIS

In his pro se Objections to the R&R, Petitioner makes the general claim that the Magistrate Judge's findings in the R&R misrepresent the state court record.[10] (See Doc. No. 17.) To evaluate this claim, the Court will independently analyze the grounds for relief raised in the Petition for Writ of Habeas Corpus. Thus, the Court will first assess the claim that Mr. Encarnacion was ineffective for failing to advise Petitioner at the guilty plea stage that he was ineligible for parole. Second, the Court will turn to the claim that Ms. Adams was ineffective for failing to raise the claim on PCRA review that Mr. Encarnacion was ineffective for failing to advise him about his eligibility for parole. (Id.) Finally, after analyzing the claims set forth in the Petition, the Court will address Petitioner's pro se Motion Requesting Leave to Amend the Petition. (Doc. No. 18.)

---

[10] The Court will not address the Objections filed on behalf of Petitioner by Mr. Rose because those Objections merely repeat the claims made in the Petition, and do not assert that the Magistrate Judge erred. (See Doc. No. 11.)

**A. Petitioner's Claim that Mr. Encarnacion was Ineffective Lacks Merit**

Petitioner first argues that he was denied effective assistance of counsel when he entered his guilty plea in state court. He contends that Mr. Encarnacion was ineffective because he failed to advise him that accepting the plea agreement meant that he was not eligible for parole. (Doc. No. 1 at 8.) In the R&R, Magistrate Judge Rice found that this issue was "plainly meritless." (Doc. No. 10 at 6.) But in his <u>pro</u> <u>se</u> Objections, Petitioner claims that the Magistrate Judge's conclusion was in error because he misrepresented the facts in the record. (<u>See</u> Doc. No. 17.) Having conducted an independent review of the state court record, the Court agrees with the Magistrate Judge's finding. Moreover, the Magistrate Judge did not misrepresent the facts in the record.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that (1) his counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced him. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). As for the first prong of the <u>Strickland</u> test, counsel falls below the threshold of reasonable performance when "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u> at 687. With respect to the second prong, a petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

The Sixth Amendment guarantees the right to counsel during the plea negotiation process. <u>Missouri v. Frye</u>, 566 U.S. 134, 140 (2012) (citing <u>Argersinger v. Hamlin</u>, 407 U.S. 25 (1972)). "When a criminal defendant is faced with a plea offer, his counsel is required to properly advise

the defendant regarding the potential sentencing exposure he faces, both if he pleads guilty and if he decides to proceed to trial." Arnold v. Superintendent SCI Frackville, 322 F. Supp. 3d 621, 632 (E.D. Pa. 2018) (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). Failure to do so may result in an unreasonably deficient performance, satisfying the first prong of Strickland. Padilla, 559 U.S. at 374; see also Fed. R. Crim P. 11(b) (requiring counsel and the court to evaluate a defendant's knowledge of the specified consequences of a guilty plea).

When a petitioner demonstrates that counsel's deficient performance caused him to plead guilty and waive his constitutional right to trial, he establishes prejudice by showing that but for counsel's errors, he would not have pled guilty and would have gone to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Boyd v. Waymart, 579 F.3d 330, 350 (3d Cir. 2009) (en banc). Additionally, to demonstrate prejudice in this context, a petitioner must show that it "would have been rational under the circumstances" to reject a plea agreement. Padilla, 559 U.S. at 372.

Turning towards the first prong of Strickland, Petitioner must demonstrate that Mr. Encarnacion failed to advise him that accepting the plea agreement meant that he would not be eligible for parole. In the Petition, he contends that Mr. Encarnacion did not tell him that "life imprisonment" meant "life imprisonment without the possibility of parole." But the record reveals a different story. In Petitioner's pro se Motion to Withdraw the Guilty Plea, which he filed eight days after the plea hearing and sentencing, he expressly stated that Mr. Encarnacion advised him that he was not eligible for parole. There, he claimed that Mr. Encarnacion pressured him to plead guilty by telling him "he could not do anything to save him other than take a life sentence without right to parole or get the death penalty, 'cut and dry.'" (Doc. No. 6-2 at 21.)

Significantly, Petitioner did not claim that Mr. Encarnacion failed to advise him about his eligibility for parole until nearly three years after the sentencing when he appealed the trial court's

decision to deny his Amended PCRA Petition. (Doc. No. 6-3 at 29.) To be sure, on collateral review he claimed that the guilty plea was involuntary. But the proffered reason for the involuntary plea was not that Mr. Encarnacion failed to advise him about his eligibility for parole; rather, he contended that the guilty plea was involuntary because Mr. Encarnacion improperly pressured him to take it. (See Doc. No. 6-2 at 42-45.) In fact, an independent review of the record shows that there was not a single mention of parole in the Amended PCRA Petition. Nor was the topic discussed during the PCRA hearing. It was not until the appeal of the trial court's PCRA decision did Petitioner first claim that Mr. Encarnacion failed to tell him that he was ineligible for parole. In the Affidavit attached to the appellate brief, Petitioner claims that the reason for the three-year delay in raising this issue was the result of the ineffective assistance of counsel on the parts of Mr. Encarnacion and Ms. Adams. (Doc. No. 6-3 at 91-92.) Indeed, he contends that he was not even aware that he was ineligible for parole until he was advised by his appellate counsel, Mr. Rose. (Id.) Of course, this contention directly contradicts the contents of his pro se Motion to Withdraw.

Based on these inconsistencies, and given the fact that Petitioner admitted in the pro se Motion to Withdraw that Mr. Encarnacion did in fact advise him that he was ineligible for parole, the Court concludes that Petitioner has failed to satisfy the first prong of the Strickland test. He has not established that Mr. Encarnacion's performance fell below an objective standard of reasonableness.

Turning to the second prong of the Strickland test, Petitioner has not established that but for Mr. Encarnacion's alleged failure to advise him on his eligibility for parole, he would have rejected the plea agreement and taken his chances at trial. In the Petition, Petitioner claims that the only reason he accepted the plea agreement was because Mr. Encarnacion did not tell him that he was ineligible for parole. (Doc. No. 1 at 8.) He further contends that if at any point he had

learned that he could never leave prison on parole, he would have rejected the plea agreement and opted to face the death penalty at trial.  (Id.)

Petitioner's contention lacks merit.  The transcript of the plea hearing and sentencing reveals that the state trial court and Assistant District Attorney Fetterman informed Petitioner that a term of the plea agreement was life imprisonment without parole.  In the opening minutes of the plea hearing, ADA Fetterman explicitly told the trial court that the Commonwealth recommended life imprisonment without the possibility of parole:

> ADA:  Your Honor, Count I of the Information is a general charge of criminal homicide.  The defendant will be pleading guilty to the specific charge of murder of the first degree pursuant to Section 2502(a) of the Crimes Code.
>
> In exchange for this plea, the Commonwealth is recommending a sentence of life imprisonment without the possibility of parole, cost of prosecution, mandated DNA sampling and cost thereof.  There is restitution due in this matter of $12,749.82.  That's the extent of the terms of the plea.

(Doc. No. 6-2 at 6.)  Later, when asking the trial court to accept the guilty plea, ADA Fetterman stated: "This is a just resolution.  This legislature has seen fit that life in Pennsylvania does mean life . . . ."  (Id. at 11.)  The trial court then accepted the guilty plea and sentenced Petitioner "to incarceration in the state correctional facility for the remainder of his life."  (Id.)  In the context of the representations made by the ADA, this latter statement by the court confirms that parole was not a future possibility.

As evidenced by the transcript of the plea hearing and sentencing, ADA Fetterman and the trial court clearly informed Petitioner that a term of the plea agreement was life imprisonment without the possibility of parole and that Petitioner would spend the rest of his life in jail.  And yet, contrary to his contentions in the habeas petition, at no point did he reject the plea agreement and decide to go to trial.  Instead, during the oral Guilty Plea Colloquy, Petitioner repeatedly

expressed that he understood the terms of the plea agreement and that he was knowingly, voluntarily, and intelligently pleading guilty to first-degree murder in exchange for life without the possibility of parole. Consequently, he has not demonstrated the prejudice required by the second prong of <u>Strickland</u>. That is, he has not established that but for Mr. Encarnacion's alleged failure to advise him about his ineligibility for parole, he would have rejected the plea agreement and opted for trial.

In sum, Petitioner has not satisfied either prong of the <u>Strickland</u> test. For this reason, the Court agrees with the Magistrate Judge's finding that the claim that Mr. Encarnacion was ineffective lacks merit.

### B. Petitioner's Claim that Ms. Adams was Ineffective in the PCRA Proceedings is Non-Cognizable[11]

Petitioner also claims that he was denied effective assistance of counsel in the PCRA proceedings because his attorney, Ms. Adams, did not raise in the Amended PCRA Petition that Mr. Encarnacion was ineffective for failing to advise him that he was not eligible for parole. (Doc. No. 1 at 8.) The Court will dismiss this claim because it is non-cognizable under Section 2254.

Section 2254(i) provides that "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Accordingly, claims of PCRA

---

[11] It is unclear from the Habeas Corpus Petition whether Petitioner claims that Ms. Adams was ineffective as a separate ground for relief, or whether he cites to Ms. Adams' performance as a means to excuse any potential default of the claim that Mr. Encarnacion was ineffective. <u>See</u> <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012) (noting that ineffective assistance of post-conviction counsel can constitute cause to overcome procedural default of an ineffective assistance of trial counsel claim). In any event, it is not necessary to undergo the analysis set forth in <u>Martinez</u> because in the preceding section the Court here found that the claim that Mr. Encarnacion was ineffective was plainly meritless, and thus, it is not necessary to evaluate whether the claim was procedurally defaulted.

counsel ineffectiveness are not cognizable on federal habeas review.  Martel v. Clair, 565 U.S. 648, 662 n.3 (2012)  ("[M]ost naturally read, § 2254(i) prohibits a court from granting substantive habeas relief on the basis of a lawyer's ineffectiveness in post-conviction proceedings . . . ."); see also Lee-Purvis v. Pennsylvania, 314 F. Supp. 3d 665, 674-75 (E.D. Pa. 2018) (noting that a claim for ineffective assistance of PCRA counsel cannot constitute a basis to grant habeas relief under Section 2254).  For this reason, the Court will dismiss Petitioner's claim that he is entitled to habeas relief because Ms. Adams was ineffective on collateral review.

### C. The Court will Dismiss Petitioner's Motion to Amend the Petition for Writ of Habeas Corpus

On the same day that he filed his pro se Objections to the R&R, Petitioner filed a pro se Motion Requesting Leave to Amend the Petition for Writ of Habeas Corpus pursuant to Federal Rule of Civil Procedure 15(c)(2).  (Doc. No. 18.)  Petitioner seeks to amend the Petition to add a the following claim:

> PCRA Counsel rendered ineffectiveness [sic] for failing to raise post sentencing counsel['s] in-effectiveness for failing to withdraw from Petitioner['s] case when Petitioner filed a pro se Motion to withdraw his guilty plea due to ineffective assistance of plea counsel, putting post sentencing counsel on notice that his stewardship was in question for allowing Petitioner to enter into an unknowingly [sic] and involuntary Guilty Plea.

(Id. at 2.)  In the body of the Motion, Petitioner explains that he seeks to add a claim that Mr. Encarnacion was ineffective for (1) failing to appeal his sentence or file any kind of post-sentence motion, and (2) failing to withdraw his appearance after Petitioner claimed he was ineffective in the pro se Motion to Withdraw Guilty Plea.   He states that he recognizes that the claim is procedurally defaulted, but requests that the Court excuse the default pursuant to Martinez v. Ryan, 566 U.S. 1 (2012) because Ms. Adams, his PCRA counsel, was ineffective for failing to raise the claim that trial counsel was ineffective in the Amended PCRA Petition.

Federal Rule of Civil Procedure 15, which governs the amendment of pleadings, applies to habeas petitions, subject to the one-year statute of limitations period under AEDPA. See United States v. Thomas, 221 F.3d 430, 435-36 (3d Cir. 2000). But as an initial matter, Federal Rule of Civil Procedure 15(c)(2) does not apply here. Rule 15(c)(2) provides notice requirements for amended pleadings when the United States is added as a defendant in a case, which has not happened here. Fed. R. Civ. P. 15(c)(2). As a result, the Court will construe the Motion as an attempt to amend the Petition under Rule 15(a), which permits amendments of pleadings with leave of court, and directs that courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a).

Reasons to deny leave to amend include "undue delay, bad faith or dilatory motive the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). In the habeas context, a proposed amendment may be futile if the claim is meritless or if it is unexhausted and procedurally defaulted. See Oke v. Wenerowicz, No. 15-61, 2016 WL 427088, at *17-18 (E.D. Pa. Feb. 4, 2016).

Here, the Court will deny Petitioner's Motion Requesting Leave to Amend the Petition because the proposed claim is unexhausted and procedurally defaulted. Under the AEDPA, "a district court ordinarily cannot grant a petition for writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court." Houck v. Stickman, 625 F.3d 88, 93 (3d Cir. 2010) (citing 28 U.S.C. § 2254(b)). The exhaustion requirement is animated by the principle of comity—a state court must be given the opportunity to address an issue before a federal court intervenes. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999).

To exhaust a claim, a Section 2254 petitioner must first "fairly present" it to the highest state court. A petitioner is said to have fairly presented a claim when he asserts "the factual and legal grounds of the federal claim with sufficient precision to give the state court notice." Adams v. Kyler, No. 01-0627, 2002 WL 1896385, at *2 (E.D. Pa. Aug. 15, 2002) (citing Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001)). If a petitioner has not exhausted his federal claim in state court, a federal habeas court cannot review it.

Where a petitioner presents a federal claim to the state court, but the state court cannot review it on procedural grounds, the claim is procedurally defaulted. If a claim is procedurally defaulted, it cannot be said to be fairly presented to the state court. Thus, a procedurally defaulted claim is considered unexhausted and is generally precluded from federal habeas review. Kyler, 2002 WL 1896385, at *2 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)).

Here, Petitioner acknowledges that his claim is unexhausted and procedurally defaulted. And the Court agrees, but not the reason offered by Petitioner. In the Motion Requesting Leave to Amend, Petitioner states that the proposed claim is unexhausted and procedurally defaulted because his PCRA counsel, Ms. Adams, did not raise it in the Amended PCRA Petition. (Doc. No. 18.) But upon careful review of that filing, it appears that Ms. Adams did in fact include a claim that Mr. Encarnacion was ineffective for "fail[ing] to file a timely motion to withdraw guilty plea, post-sentence motion and notice of appeal after specifically being requested by Defendant to withdraw his plea before the Lancaster Court of Common Pleas and appeal his conviction to the Pennsylvania Superior Court." (Doc. No. 6-2 at 45.) Thus, Ms. Adams presented the claim to the state trial court on PCRA review.

After the trial court denied Petitioner PCRA relief, he filed a Notice of Appeal. Then, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), he filed a Rule 1925(b) Statement

with the trial court, in which he raised the issue that Mr. Encarnacion was ineffective for failing to appeal his conviction and sentence. (Id. at 183.) However, in the appellate brief filed with the Pennsylvania Superior Court, he only raised the following two issues: (1) whether the guilty plea was involuntary because he did not know that he was ineligible for parole, and (2) whether Mr. Encarnacion was ineffective for failing to advise him that he was not eligible for parole. (Doc. No. 6-3 at 29.) He did not raise the issue of whether Mr. Encarnacion was ineffective for failing to appeal the conviction and sentence. As a result, the Superior Court did not review the issue because under Pennsylvania Rule of Appellate Procedure 2116, an appellate court will not consider an issue "unless it is stated in the statement of questions involved [in the appellate brief] or is fairly suggested thereby." Pa. R. App. P. 1925(b). Consequently, contrary to Petitioner's Motion, the proposed claim is not procedurally defaulted because Ms. Adams did not raise not it in the Amended PCRA Petition; it is procedurally defaulted because it was not raised before the Pennsylvania Superior Court on appeal.[12] See Charlton v. Wakefield, No. 07-200, 2010 WL 724521, at *10 (W.D. Pa. Mar. 1, 2010) (holding that a claim which is raised in a Rule 1925(b) Statement, but not fairly presented in the appellate brief is procedurally defaulted).

A federal court can review a procedurally defaulted habeas claim if the "prisoner can demonstrate cause for default and actual prejudice as a result of alleged violation of federal law, or demonstrate that failure to consider claims will result in fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). To demonstrate cause and prejudice, the petitioner must show some objective factor external to the defense that impeded counsel's efforts to comply with the state procedural rule at issue. Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir.

---

[12] At no point in the state court proceedings did Petitioner claim that Mr. Encarnacion was ineffective for failing to withdraw his appearance on behalf of Petitioner.

2004) (quoting <u>Murray</u>, 477 U.S. at 488). To establish a fundamental miscarriage of justice, the petitioner must demonstrate actual innocence. <u>Schlup v. Delo</u>, 513 U.S. 298, 324-26 (1995).

"[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court" provides cause to excuse procedural default of a habeas claim. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488-89 (1986)). Not just any deficiency in counsel's performance will do—"the assistance must have been ineffective as to violate the Federal Constitution." <u>Id.</u> Thus, to constitute cause, the ineffectiveness must violate the Sixth Amendment. Additionally, the ineffective assistance of counsel claim must have been presented to the state courts as an independent claim before it can be used to establish cause for a procedural default on habeas review. <u>Id.</u>

Here, Petitioner claims that the procedural default should be excused because his PCRA counsel, Ms. Adams, was ineffective for failing to raise it in the Amended PCRA Petition. (Doc. No. 18.) This claim invokes <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), a case in which the United States Supreme Court held that ineffective assistance of post-conviction counsel can constitute cause to overcome procedural default of an ineffective assistance of trial counsel claim. However, as noted above, Ms. Adams did in fact raise this issue in the Amended PCRA Petition and the procedural default was actually a result of the failure to raise the issue in the appellate brief—a stage at which Petitioner was represented by private counsel, Mr. Rose. Petitioner has not advanced any arguments that Mr. Rose was ineffective for deciding to omit this issue in the appellate brief. Consequently, Petitioner has not shown that cause exists to excuse the procedural default of the proposed claim.

And so, in sum, amending the Petition with the proposed claim would be futile because the claim is unexhausted and procedurally defaulted, and because Petitioner has not shown cause to

excuse the default. As a result, the Court will deny the Motion Requesting Leave to Amend the Petition.

**D. Petitioner is Not Entitled to a Certificate of Appealability**

Finally, a certificate of appealability will not be issued. The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Based on the Court's analysis, a reasonable jurist could not conclude that the Court is incorrect in denying and dismissing the Amended Petition for Writ of Habeas Corpus. See 28 U.S.C. § 2253(c)(2).

## V.   CONCLUSION

For the foregoing reasons, the Court will adopt the Report and Recommendation (Doc. No. 10) in its entirety, and deny the Petition for Writ of Habeas Corpus (Doc. No. 1). Additionally, the Court will deny Petitioner's Motion Requesting Leave to Amend the Petition. (Doc. No. 18.) An appropriate Order follows.